**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARRETT REEVES, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>       v.<br><br>NIANTIC, INC.,<br><br>                                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jarrett Reeves (hereinafter "Plaintiff"), brings this action on behalf of himself and all others similarly situated against Defendant Niantic, Inc. (hereinafter "Defendant" or "Niantic"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE CASE

1.      This is a putative class action brought by Plaintiff and all others similarly situated due to deceptive and misleading trade practices by Defendant in marketing and selling in-game items and in-game currency for its popular online video game, Pokémon Go (hereinafter, "Pokemon").  These items and in-game currency are frequently purchased by minors who were unable to exercise their unrestricted rights under state laws to rescind contracts into which they entered.

2.      Niantic is a provider of socially connected video games on the internet.  Niantic allows for free downloads of video game applications including *Pokemon*, i.e. video game software that users download on different computing device platforms, including iOS and Android.  Users running *Pokemon* on their devices connect to Niantic's software servers and other users connected through the internet together to create a simulation of the real-world in the digital realm, i.e., cyberworld.  Niantic provides a video game service, i.e., an entertainment or recreational service through the internet.

3.      Plaintiff brings this action for declaratory, equitable and monetary relief under the Declaratory Judgment Act, California's contract laws, Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq*., Breach of Good Faith and Fair Dealing, Negligent Misrepresentation, Business and Professions Code Sections 17200 *et seq.*, and/or for Unjust Enrichment.

4.      This is a class action, filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons in the United States who, while under the age of 18, had a *Pokemon* account that they used to play the game on any device, in any mode, and exchanged in-game virtual currency for any in-game benefit, or purchased virtual currency or any other in-game benefit for use within *Pokemon.*

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class is a citizen of a State different from the Defendant.  The number of members of the proposed Class in aggregate exceeds 100 accountholders.  28 U.S.C. § 1332(d)(5)(B).

6.     This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in this District.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because Defendant maintains its principal place of business in this District.

**PARTIES**

8.     The foregoing allegations are incorporated by reference and realleged herein.

9.     Plaintiff Jarrett Reeves is a natural person and resident of Texas.

10.     Defendant Niantic, Inc., is a Delaware corporation with its headquarters and principal place of business located in San Francisco, California, and has regularly engaged in business in this district.  Defendant directs the marketing and development of its products and services, including the subject *Pokemon* video game, and the deceptive and unfair conduct stemming therefrom, from its headquarters located in San Francisco, California.

**GENERAL BACKGROUND**

**A.     *Pokemon***

11.     *Pokemon* is an online augmented reality video game in which players use mobile devices with GPS to locate, capture, train, and battle virtual creatures, called Pokémon, which appear as if they are in the player's real-world location.

12.     *Pokemon,* during the relevant time period, was available on iOS and Android, and has become one of the most played games on the planet, with more than 147 million monthly active users.  Regardless of the whether a player is on an iOS or Android platform, a player's experience and Defendant's representations are the same.

---

13.     *Pokemon* breaks away from the traditional pay-for-game model, wherein a consumer pays a one-time fee for a game and gains access to all of its features, and instead offers the game for free with the hopes that players purchase various in-game items. This is referred to as the free-to-play or "freemium" model.

14.     The free-to-play model has broadened *Pokemon*'s customer base by allowing players, including minors, to start playing the game without requiring payment or parental consent.

15.     However, while *Pokemon* can be played without making in-game purchases, the social nature of the game exacerbates the need for players, especially impressionable minors, to make in-game purchases.  Players are left with little choice but to make in-game purchases in order to meaningfully enjoy the game and avoid lack of progression.

### 1.     *PokéCoins*

16.     Niantic derives most of its *Pokemon*-related revenue through the sale of "PokéCoins" or "PokeCoins," *Pokemon*'s in-game currency.  PokeCoins are an in-game currency created by Defendant solely for the *Pokemon* game, and are used by players to purchase equipment, tools, clothing, characters, "loot boxes," items granting additional gameplay opportunities, and expanded virtual storage for items within the *Pokemon* virtual world.

17.     Critically, PokeCoins purchases are non-refundable, regardless of whether the purchaser is a minor, or whether the minor's parent or guardian has for any reason changed their mind about their purchase.

18.     While users can earn PokeCoins in-game instead of purchasing them for money, earning PokeCoins in the game is a difficult, time consuming, and an inconsistent process due to the amount of playtime required and the randomness at which PokeCoins are offered as rewards. Further, Defendant artificially caps the total amount of PokeCoins that a player can earn in one day at 50 PokeCoins.  By making PokeCoins inordinately difficult and time consuming to earn, Defendant creates a "paywall" to induce players to purchase PokeCoins instead of earning them.

19.     The smallest amount of PokeCoins a player can currently purchase is 100 PokeCoins for $0.99.  However, Defendant encourages players to purchase larger quantities of

1    PokeCoins by providing discounts on larger amounts.  For example, as shown below, a player

2    could purchase a whopping 14,500 PokeCoins for $99.99.



15         20.    Although Defendant could have very easily based in-game transactions on actual

16    currency, requiring the conversion of money to PokeCoins permitted Defendant to particularly

17    maximize its revenue in several ways.  First, the PokeCoins system distances the player

18    psychologically from the amount of real-world money he or she has spent within the game.  The

19    PokeCoins system serves to psychologically distance players from the financial implications of

20    their in-game purchases by disconnecting the expenditure of real money from the products the

21    players purchase with their digital PokeCoins.  This is especially the case for minors who may not

22    have a firm understanding of the correlation between the amount of real-world money and

23    PokeCoins spent.  If *Pokemon* followed a traditional pay-for-game model, most players would

24    think that spending hundreds of dollars, let alone thousands of dollars, is an exorbitant price to pay

25    to play a single video game.

26         21.    Defendant implements further pricing control by selling PokeCoins in currency

27    packs and setting the price of in-game loot at odd amounts.  The amount of PokeCoins in a

currency pack almost never corresponds evenly to the price of loot.  Using this system, Defendant perpetuates a cycle of *Pokemon* players constantly needing PokeCoins, never having enough, and purchasing more.  This cycle is further perpetuated by Defendant offering "limited time sales" and time-sensitive in-game "events" creating a sense of urgency to purchase.

22.     Defendant also encourages player spending by varying the exchange rate at which PokeCoins are purchased in different transaction sizes.  While 100 PokeCoins can currently be purchased for $0.99 – an exchange rate of approximately 101 PokeCoins per dollar, a player who purchases 14,500 PokeCoins in a single transaction is charged $99.99, an exchange rate of approximately 145 PokeCoins per dollar.

23.     Finally, Defendant induces players into making more purchases by making the purchase process incredibly easy.  Once a player enters and saves a payment method, that player can purchase PokeCoins at any time almost instantly.  In practice, this means minors whose parents enter and save their credit cards into a *Pokemon* account can use their parents' credit cards to make an endless number of purchases.  The ease of purchase combined with the constant cycle of introducing new items and time-sensitive "events" for results in more purchases.

### 2.     Digital Content

24.     *Pokemon's* digital content, broadly speaking, includes two types of content: (i) related to items; and (ii) related to play such as "raids," "battles," and "events."  Both are for a user's enjoyment when playing the video game.

25.     *Pokemon's* digital content items include, for example, "boxes," "incubators" for "eggs," "poffins," "poke balls," "incense," "rocket radars," "star pieces," "potions," "lucky eggs," "revives," "lures," and "upgrades" to storage.  Players can also change the appearance of their virtual avatar with PokeCoin purchases, including purchasing poses, hats, masks, glasses, tops, bags, gloves, bottoms, socks, and footwear.

//

//

//

//




26.     Defendant provides these digital content items as part of an entertainment service for recreation purposes.

27.     *Pokemon's* digital content related to play "passes" for "raid" events, and "battle passes." "Raids" are limited-time "battles" where players team up to defeat a rare "boss" Pokémon creature. If the players win, they are given the opportunity to "capture" the "boss" Pokémon. If they are successful, it is added to their collection. Neither the win nor the capture are guaranteed.

28.     Defendant regularly does "limited time" raid events, where players are given until a certain date to catch particularly rare "raid bosses." After the event ends, that specific raid boss is no longer available for players to even attempt to capture, further enticing purchases of additional opportunities and items in order to capture these creatures before time runs out.

29.     *Pokemon's* digital content is updated frequently, with new Pokémon creatures and events consistently added and advertised.  Thus, after purchasing digital content items, players are tempted and induced to make more purchases within a short time frame when newer content is made available, which is regularly presented on a limited-time basis.  Further, the constant turnover of events makes prior purchases feel stale.  Players are not able to enjoy purchases already made to the fullest extent because of Defendant's frequency of pushing out new events.  Players are also tempted and induced to make immediate purchases because event-based content is only made available for purchase for a limited time.

### 3.     Pokemon Loot Boxes

30.     In addition to obfuscating the amount of money that players spend in-game, Defendant previously maximized the amount of money that players spent in-game by incorporating so-called "loot boxes" into its game design.  Defined generally, a loot box is an in-game virtual item that contains character costumes, tools, emotes and other specific in-game items that the player can use to progress through the game.

31.     Defendant's "eggs" and the related "incubators" fit this definition.  "Eggs" are free to acquire but the virtual creatures within them need to be "hatched," or unlocked, by walking specific distances in the real world.  A player can hatch one egg at a time using the game's "infinite" incubator, or buy limited-use "incubators" to stack up to eight more incubators at once.  Finally, the top tier of paid "incubator" additionally offers the ability to hatch Pokémon at a faster rate.

//
//
//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

 

17    32.    The creatures received from hatching eggs are randomized from the perspective of

18  the player.  Critically, Defendant obscured the odds of receiving the rarest Pokémon in its Eggs,

19  luring players into making more and more purchases of incubators on the off-chance that the next

20  egg will contain the rare Pokémon they are seeking.  However, had players known the actual odds

21  of receiving the Pokémon they desired, they would not have purchased the loot boxes.

22    33.    This system was created to capitalize on and encourage addictive behaviors, akin to

23  gambling.  Minors are especially susceptible to these addiction-enhancing elements of game

24  design.  The experience of acquiring surprise rewards and the associated excitement of uncovering

25  unexpected in-game items holds a strong appeal for minors and reinforces their desire to keep

26  playing and keep getting rewards.

27    34.    Defendant still takes in large amounts of money from in-game purchases and

28  utilizes ever changing "events" that introduce new Pokémon for players to pursue.

35.     Furthermore, *Pokemon* still fails to provide an unrestricted right to seek refunds of any in-game purchases made by minors.

### 4.     Pokemon In-App Purchases

36.     *Pokemon* can be played on different platforms and computing devices including iOS and Android.  Minors download and install *Pokemon* and play on different platforms.

37.     While on its face it appears that Niantic requires that its terms of use be accepted by legal adults 18 years and older, Niantic targets minors.  An agreement that explicitly requires acceptance by an adult cannot apply to a minor, and minors have a legal right to disaffirm contracts into which they enter.  In fact, Niantic allows minors to make purchases even after informing Niantic that they are below the age of 18.  When setting up their account, the first action players take is to provide Niantic with their date of birth:



38.     Minors make in-App purchases, including, for example, purchasing PokeCoins to use for in game items and gameplay.  Minors wanting to refund their in-App purchases have no means within the game to request a refund.  Niantic's terms of use explicitly states "that all sales

1   by us to you of Virtual Money and Virtual Goods are final and that we will not permit exchanges

2   or refunds for any unused Virtual Money or Virtual Goods once the transaction has been made."[1]

3        39.    Minors make PokeCoin purchases without understanding the amounts of actual

4   money involved to-date, that day, that week or that month.  Minors often make PokeCoins

5   purchases through their parents' credit cards and debit cards that were already stored on various

6   gaming platforms.  Parents and guardians who store credit card information in a gaming platform

7   likely do not realize that those to whom they give access to the platform can use that credit card to

8   make in-game purchases.

9        40.    Separate from purchases made directly from Niantic, Plaintiff and minor Class

10   members have made purchases from third-party marketplaces like the Apple Store.  PokeCoins gift

11   cards are available for use on those marketplaces and minors who receive these gift cards for

12   birthdays, etc., have been able to use their own money to purchase PokeCoins (as opposed to

13   parental money charged on credit cards).  Minor Class members who wanted to cancel those own-

14   money purchases were not allowed to do so under Niantic's or the third-party marketplaces' non-

15   refundable policies.

16        41.    Prior to making the in-App purchases, minors are generally not aware of the

17   nonrefundable policy for in-app purchases.  Plaintiff and minor Class members are not buyers who

18   would look for refund policy options at the time of purchase.

19        42.    In many instances, a parent or guardian may not review his or her credit cards, debit

20   cards, and bank account information until months after the purchases occurred and thus would not

21   know of the amounts spent at the time of purchase.

22        43.    After making those purchases within the *Pokemon* ecosystem, minors who attempt

23   to request refunds may find that none of the purchases could be refunded.  Without hiring counsel,

24   minor Class members and their guardians are not aware of a minor's right to disaffirm and get

25   refunds on any and all in-App purchases without any restrictions.

26

27   _____

28   [1] https://nianticlabs.com/terms/en/

### 5. Niantic Induces Minors to Make Frequent In-App Purchases

44.     Niantic induces minors to make purchases by its operation of PokeCoins currency within the *Pokemon* ecosystem.

45.     Niantic induces minors to make in-App purchases by promoting deals and price-cuts on different purchases that appear very enticing.

46.     Niantic induces minors by concealing the terms of the in-App purchase at the time of purchase by not displaying non-refundability or by displaying non-refundability in very small font.

47.     Niantic induces in-App purchases by allowing one-click and easy to make in-App purchases within *Pokemon.*

48.     Niantic does not give minors enough information to make reasonable and prudent choices with in-App purchases.

49.     Niantic further induces frequent in-App purchases by constantly pushing newer content and time-sensitive events.  Purchases already made become stale quickly.  Players are induced to make frequent in-App purchases to keep up with their peers on whatever is the current fad or challenge.

50.     By operation and policies of the *Pokemon* ecosystem, Niantic is benefiting by luring minors into making in-App purchases that test the tolerance levels of parents.  In many instances, parents ignore these expenses as one-time expenses at the early stages of using *Pokemon*.  By disallowing refunds in the *Pokemon* ecosystem, while also making one-click purchases in the same ecosystem easy, Niantic is running an unfair system.

### 6. Niantic Misleads or Misrepresents Information Related to In-App Purchases

51.     Niantic misleads or misrepresents the applicable law for transactions including in-App purchases with minors.  Niantic knows that in the state California, and in most states nationwide, the law allows minors to disaffirm contracts.  Niantic also knows that a minor can disaffirm contracts without any restrictions; the law permits a minor to do so.  Yet, Niantic operates

a non-refund policy that misleads, misrepresents, and does not acknowledge a minor's right to get a refund.

52.     Before hiring counsel in this action, Plaintiff was not aware of a minor's right to disaffirm and request a refund.  On information and belief, Niantic's customer support routinely sends emails to players, including minors, stating that in-App purchases are non-refundable.

53.     During the early use of *Pokemon*, a parent may not be monitoring his or her own credit card, debit card or bank account information closely.  In such instances, the early purchases go undetected for a long period of time.

54.     Niantic misleads or misrepresents actual amounts spent on an in-App purchase by using intermediary PokeCoins amounts that require difficult calculations to figure out the accurate amounts spent.

55.     Niantic conceals and misleads minors by not displaying the terms of the in-App purchase at the time of purchase including non-refundability or by displaying non-refundability in very small font at the side.  By not including any visibly cautionary language at the time of promoting in-App purchases, Niantic is misleading the minors.

56.     Niantic misleads or misrepresents the current value of a digital content item by not disclosing when newer related content will be published.  Minors have no way of knowing, for example, if a purchase they are making today will become stale within a day or two, or a week when newer content is published.

**PLAINTIFF'S EXPERIENCE**

57.     Plaintiff was an avid player of Defendant's *Pokemon* video game during the relevant time period.

58.     Throughout his time playing Defendant's video games, Plaintiff has relied on Defendant's advertising of time-sensitive "events."

59.     Throughout his time playing Defendant's video games, Plaintiff has also relied on Defendant's representations regarding the value of any in-game items that they received and were otherwise unaware of what any particular in-game item costs in real-world currency.

60.     Despite spending the equivalent of at least $252.66 in real-world currency on Defendant's loot boxes and in-game items while under the age of 18, Plaintiff almost never received any items that had real value.  Plaintiff often failed to obtain the specific Pokémon creatures he was seeking despite spending money.

61.     Had Plaintiff known the extremely low chances of catching or receiving any of the rare Pokémon featured and advertised by Defendant, he would not have made any in-game purchases.

62.     Nor would Plaintiff have made the number of in-game purchases that he did had Defendant not required them to use its virtual currency.

63.     While *Pokemon* requires that its Terms of Use be accepted by a legal adult over the age of 18 to play the game, Defendant failed to implement sufficient mechanisms for parental consent controls and does not put any procedure in place for minors to consent to the Terms of Use through their adult guardian prior to downloading and playing *Pokemon*.  In fact, despite the terms of use, Defendant encourages and permits minors to make purchases even after minors inform Defendant about their ages, which the game requires them to do prior to playing.

64.     Plaintiff does not recollect seeing, reading, or agreeing to Defendant's Terms of Use prior to playing *Pokemon*, and his guardians also did not see, read, or agree to the terms.

65.     As a result, Plaintiff made several in-game purchases that were labeled non-refundable using their own and their guardians' funds.

66.     Had Defendant provided proper parental control and age verification features, Plaintiff would not have been able to make any of the purchases that he did.  And had Defendant permitted Plaintiff to disaffirm his contracted purchases, he would have done so.

67.     Plaintiff played *Pokemon* during the relevant time period.  Plaintiff used an iPhone to play *Pokemon*.  He does not recollect seeing, reading or agreeing to the EULA or any amended EULAs.

68.     Plaintiff has made several in-App purchases, including for example, Event Bonuses and New Trainer Boxes.  He wanted to disaffirm the in-App purchases related to these purchases

and request a refund but was not allowed to do so within the *Pokemon* ecosystem.  Within the *Pokemon* ecosystem, these purchases are non-refundable.

69.     Plaintiff has made PokeCoins purchases without understanding the amounts involved in actual money to-date, that day, that week or that month. Plaintiff has made PokeCoins purchases through his parents' credit cards and debit cards that were available from his gaming platforms.  At other times Plaintiff cards associated with his own bank account.

70.     Plaintiff has used his own money through gift cards received on social occasions including birthdays. He has used gift cards on more than one occasion, including gift cards from Niantic payment vendors, for example, the Apple App Store. Subsequent to the purchases, Plaintiff wanted to cancel those purchases but was not allowed to do so under Niantic's non-refundable policy.

71.     Prior to making the in-App purchases, Plaintiff was not aware of the non-refundable policy.  Plaintiff and Class members are not buyers who would look for refund policy options at the time of purchase.

72.     Plaintiff's parents did not receive any notifications of the in-App purchases from Niantic.

73.     Before hiring counsel in this action, neither Plaintiff nor his parents were aware of a minor's right to disaffirm and get refunds on any and all in-App purchases without any restrictions.

74.     Plaintiff relied on Niantic's misrepresentations regarding non-refundability for purchases.

75.     Plaintiff has not been able to earn sufficient PokeCoins within the game and all of his in-App purchases were purchases made through credit cards or debit cards from the gaming platform or gift cards.

76.     Niantic induces minors to make purchases by its operation of PokeCoins currency within the *Pokemon* ecosystem as outlined above.

77.     Plaintiff has made purchases after viewing promotional events.  He has made one-click purchases.

78.     Plaintiff did not have information on his own purchase history or summary of amounts already spent with in-App purchases.

79.     Plaintiff has felt dissatisfied with items purchased that became stale within a week or less.  Plaintiff has also felt dissatisfied with purchases that he made when he was attempting to obtain rare Pokémon promoted in a limited-time events, but was unable to do so.

80.     Plaintiff has played *Pokemon* for long periods of time, which has adversely affected his sleep at night and overall health.  He has also played *Pokemon* for extended times outside his regular playing window further affecting his sleep and health adversely.  Plaintiff has made in-App purchases when he was tired after playing for long periods of time.

81.     In many instances, during the use of *Pokemon*, Plaintiff's parents reviewed his credit cards, debit cards and bank account information months after the purchases occurred.

## CLASS ALLEGATIONS

82.     Plaintiff seeks to represent a class defined as:

**The Class:**

> All persons in the United States who, at any time between July 6, 2016 and the present, had a *Pokémon* account that they used to play either game on any device and in any mode and, while under the age of 18, (a) exchanged in-game virtual currency for any in-game benefit, or (b) made a purchase of virtual currency or other in-game benefit for use within *Pokemon.*

83.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

84.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint.

85.     **Numerosity.**  On information and belief, tens of thousands of consumers fall into the definitions of the Class.  Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

86.     **Commonality and Predominance.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendant's practice of not disclosing the content of loot boxes was deceptive to a reasonable consumer;

    b.  Whether Defendant's practice of requiring purchase of its virtual currencies to advance in its games constituted a deceptive practice;

    c.  Whether Defendant's failure to provide a method for minors or their guardians to disaffirm any purchases violated their consumer rights;

    d.  Whether Defendant's pricing schemes for its virtual currencies constituted a deceptive practice;

    e.  Whether Plaintiff and the other Class members were damaged by Defendant's conduct; and

    f.  Whether Plaintiff and the other Class members are entitled to restitution or other relief.

87.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

88.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

89.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the Class obtain effective redress for the wrongs committed against the members on an individual basis. Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

90.     Further, Defendant has acted and refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violation Of The California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq*.**
**(on behalf of Plaintiff and the Class)**

91.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

92.     Plaintiff and the other Class members are consumers within the meaning of Cal. Civ. Code § 1761(d).

93.     Niantic provides an entertainment service through its in-App purchases using internet and cloud-based technology.  Plaintiff and Class members incorporate and reallege all allegations set out in the paragraphs 2, 3, 10-18 above.

94.     Niantic violated CLRA's proscription against the concealment of the characteristics, use, benefit, or quality of entertainment services by actively marketing and promoting certain in-App game purchases with the intent to induce minors to make purchases. Niantic conceals the properties of the entertainment service products by, in many instances, not displaying that all

purchases are refundable for minors nationwide.  Plaintiff and Class members incorporate and

reallege all allegations set out in the paragraphs above.

95.     Niantic has violated: (a) § 1770(a)(5)'s proscription against representing that the

services have uses or characteristics they do not have.  Niantic represents through its pop-ups in

marketing within the Pokemon ecosystem that buying a digital item is a great value proposition and

is offered at a discounted price when Niantic knows that soon such a digital item will be stale when

newer content is published within a week or less.  Plaintiff and Class members incorporate and

reallege all allegations set out in the paragraphs above.

96.     Niantic has violated (c) § 1770(a)(14)'s proscription against "Representing that a

transaction confers or involves rights, remedies, or obligations which it does not have or involve, or

which are prohibited by law."  Niantic makes in-App purchases non-refundable when such non-

refundability is prohibited by law when purchased by minors.  Niantic makes in-App purchases

stale within a short time period, a week or less, after purchase by pushing out newer content.  The

in-App purchases lack the particular standard or quality by becoming stale soon after purchase,

thereby, not allowing full enjoyment of the purchase.  Plaintiff and Class members incorporate and

reallege all allegations set out in the paragraphs above.

97.     Niantic owes a duty of care to disclose material facts, including non-refundable

terms and historical statements of in-App purchases made to-date when dealing with vulnerable

class of consumers, i.e. minors.  Plaintiff did not receive any notification of in-App purchases from

Niantic at the time of purchase.  For in-App purchases that were charged through the underlying

gaming platform or Niantic's payment vendors, Plaintiff did not have access to any of the bank or

credit card financial statements.  Plaintiff was not aware of the total amounts he was spending with

in-App purchases.

98.     Plaintiff and the Class suffered actual damages as a direct and proximate result of

Niantic actions, concealment and/or omissions in the advertising, marketing and promotion of its

bait Apps, in violation of the CLRA, as evidenced by the substantial sums Niantic pocketed.

99.     Plaintiff, on behalf of himself and on behalf of a similarly situated Class of

consumers seek injunctive relief under Cal. Civ. Code § 1780(d).

**SECOND CAUSE OF ACTION**
**Violation Of The California Business & Professional Code §17200**
**(on behalf of Plaintiff and the Class)**

100.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

101.    Plaintiff and Class members have standing to pursue a cause of action against Defendant for unfair and/or unlawful business acts or practices because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

102.    Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 *et seq*. ("UCL") because it is in violation of the minor's right to disaffirm contract, CLRA, breach of good faith and fair dealing, and negligent misrepresentation, as discussed above.

103.    Defendant's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public.  Defendant engages in unfair practices by actively advertising, marketing and promoting Apps as "free" with the intent to induce minors to purchase Game Currency in a manner likely to deceive the minors.  Plaintiff and Class members incorporate and reallege all allegations set out in the paragraphs above.

104.    In addition, Defendant's conduct constitutes a fraudulent business practice within the meaning of Bus. & Prof. Code § 17200, *et seq*., in that Defendant intentionally and knowingly omitted giving information that refunds are allowed for minors without any restrictions under applicable law.  Such representations and omissions misled Plaintiff and Class members and are likely to mislead the public.  Plaintiff and Class members incorporate and reallege all allegations set out in the paragraphs above.

105.    Defendant was aware that minors are a significant population of the individuals who play its *Pokemon* game and that they are not capable of entering into binding contracts including for purchases of goods such that Defendant should have included parental control features and

provided for an unrestricted right for minors and their guardians to seek refunds of any purchases made.

106.    Defendant did not make Plaintiff or the other members of the Class aware that they had an unrestricted right to refund any purchases, and did not implement any age verification or parental control features in its *Pokemon* video game that would have prevented Plaintiff and the other Class members from making the purchases that they did, or would have otherwise allowed them to seek a refund for their purchases.

107.    Defendant intentionally and knowingly did not give information that refunds are allowed for minors without any restrictions under applicable law.  Such representations and omissions misled Plaintiff and Class members and are likely to mislead the public.

108.    Defendant knew or should have known that its representations regarding the in-App purchases were false, deceptive, and misleading.

109.    Defendant's conduct described herein constitutes an unfair business practice because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public.  Defendant engages in unfair practices by actively advertising, marketing and promoting Apps as "free" with the intent to induce minors to purchase in-game currency in a manner likely to deceive the minors.

110.    Defendant's wrongful conduct is ongoing, and part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

111.    As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiff and the other members of the Class, suffered actual damages, including monetary losses.

112.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction enjoining Defendant from continuing to engage in the conduct described above, or any other act prohibited by law.

113.    Plaintiff also seeks rescission and an order requiring Defendant to make full restitution and to disgorge its ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

114.   Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**THIRD CAUSE OF ACTION**
**Restitution or Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

115.   The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

116.   Plaintiff and the other Class members conferred an economic benefit on Defendant through their in-game purchases.

117.   It is inequitable and unjust for Defendant to retain the revenues obtained from in-game purchases made by Plaintiff and the other Class members because Defendant knowingly mispresented and omitted the odds of receiving valuable loot in its loot boxes.  Had Plaintiff and the other Class members known the odds of obtaining valuable loot, they would not have made the purchases.

118.   It is also inequitable and unjust for Defendant to retain the revenue obtained from in-game purchases made by Plaintiff and the other Class members due to the deceptive nature of Defendant's in-game currencies in its *Pokemon* video game that did not allow Plaintiff and the other Class members to see the real-world currency value of the items that they were purchasing.

119.   Additionally, under principles of equity and good conscience, Defendant should not be permitted to retain the revenue it acquired through its unlawful conduct, i.e. with its non-refundable policy.  Defendant's conduct is unlawful because it is in violation of the minor's right to disaffirm contract, CLRA, UCL, breach of good faith and fair dealing, and negligent misrepresentation, as discussed above.

120.   Defendant has lured minors, i.e. Plaintiff and Class members into making in-App purchases.  Defendant has misled and misinformed minors, i.e. Plaintiff and Class members.

121.   Accordingly, because Defendant will be unjustly enriched if it is allowed to retain such funds, Defendant must pay restitution to Plaintiff and the other Class members in the amount which Defendant was unjustly enriched by each of their in-game purchases.

**FOURTH CAUSE OF ACTION**
**Declaratory Judgment on Minor's Rights to Disaffirm**
**(on behalf of Plaintiff and the Class)**

122.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

123.    Niantic's *Pokemon* video game is approved for players 13 years and older. Niantic enters into a contract with a minor when an in-App purchase by the minor is confirmed, and thus accepted.  Niantic gives the consideration of digital content and entertainment service of in-App purchases, i.e. PokeCoins, exchanged for consideration of returned purchase value in actual money from the minor.  Plaintiff and Class members incorporate and reallege all allegations set out above.

124.    Under California law, and equivalent law in most states nationwide, minors have the right to disaffirm contracts such as those at issue here. Cal. Fam. Code § 6710 (2010).

125.    Minors may disaffirm or a guardian may disaffirm a contract on behalf of a minor within a reasonable amount of time of turning 18.  By no later than the filing date of this lawsuit, Plaintiff disaffirmed all in-App purchases made through *Pokemon* to-date and requested a refund. Plaintiff seek injunctive relief on behalf of the Class for future and prospective transactions on the Pokemon video gaming platform and ecosystem to allow for refunds on all in-App purchases without restrictions.

126.    The contracts between Defendant and the members of the Class who are minors are voidable - a fact that Defendant denies as evidenced by its denial of the Class's right to be refunded in its terms of use.

127.    Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

128.    This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq*., seeking a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the sales contracts between Defendant and Class members who are minors, relating to the purchase of in-game currency, are voidable at the option of those Class members or their guardians; ( c) if the class members elect to void the contracts, they will be entitled to restitution

and interest thereon; (d) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and such other and further relief as is necessary and just may be appropriate as well.

### FOURTH CAUSE OF ACTION
**Negligent Misrepresentation**
**(on behalf of Plaintiff and the Class)**

129.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

130.    Niantic had a duty to provide honest and accurate information to its customers including minors so that the minors could make informed decisions on the in-App purchases.

131.    Niantic breached its duty when it specifically and expressly misrepresented material facts to Plaintiff and the other Class members, as discussed above by not allowing minors to receive refunds when the law expressly allows it.

132.    Niantic knows, or in the exercise of reasonable diligence, should have known, that any ordinary minor would be misled by Niantic's misleading and deceptive in-App game purchase policies.

133.    Plaintiff and the other Class members justifiably relied on Niantic's misrepresentations and have been subsequently damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B.    For an order issuing a declaratory judgment that the sales contracts between Defendant and Plaintiff and the minor Class members are voidable;

C.    For an order declaring the Defendant's conduct violates the laws referenced herein;

D.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

E.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.      For prejudgment interest on all amounts awarded;

G.      For an order of restitution and all other forms of equitable monetary relief;

H.      For injunctive relief as the Court may deem proper; and

I.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

### **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 30, 2021                          Respectfully submitted,

                                              **BURSOR & FISHER, P.A.**

                                              By:_____*/s/ L. Timothy Fisher*_____
                                                        L. Timothy Fisher

                                              L. Timothy Fisher (State Bar No. 191626)
                                              1990 North California Boulevard, Suite 940
                                              Walnut Creek, CA  94596
                                              Telephone: (925) 300-4455
                                              Facsimile:  (925) 407-2700
                                              E-Mail: ltfisher@bursor.com

                                              **BURSOR & FISHER, P.A.**
                                              Philip L. Fraietta (*pro hac vice* forthcoming)
                                              Alec M. Leslie (*pro hac vice* forthcoming)
                                              888 Seventh Avenue
                                              New York, NY 10019
                                              Telephone: (646) 837-7150
                                              Facsimile: (212) 989-9163
                                              E-Mail:  pfraietta@bursor.com
                                                        aleslie@bursor.com

                                              *Attorneys for Plaintiff*