COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
KRISTINE A. FORDERER (278745)
(kforderer@cooley.com)
CAMERON J. CLARK (313039)
(cclark@cooley.com)
REBECCA FERRARI (334860)
(rferrari@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
NIANTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JARRETT REEVES, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NIANTIC, INC.,<br><br>　　　　　Defendant. | Case No. 3:21-cv-05883-VC<br><br>**NIANTIC'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:　　　March 31, 2022<br>Time:　　　10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge:　　 Hon. Vince Chhabria<br>Trial Date: Not Yet Set |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................. 1
STATEMENT OF RELIEF SOUGHT .................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1
    I.    INTRODUCTION ............................................................................................ 1
    II.    FACTUAL BACKGROUND ........................................................................... 3
        A.    Niantic and Plaintiff Jarrett Reeves ...................................................... 3
    III.    LEGAL STANDARD ...................................................................................... 4
    IV.    LEGAL ARGUMENT ..................................................................................... 4
        A.    Plaintiff's CLRA, UCL, and negligent misrepresentation claims fail. ...................................................................................................... 5
        B.    Plaintiff's CLRA claim fails for additional claim-specific reasons. ........... 7
            1.    Plaintiff failed to serve a CLRA pre-litigation demand. ................. 7
            2.    Plaintiff has not pled claims related to a "good or service" under the CLRA. ............................................................................. 8
        C.    Plaintiff's UCL claims fail for additional reasons. ............................... 10
        D.    Plaintiff's claim for declaratory relief under California Family Code § 6710 fails. ............................................................................... 11
        E.    Ninth Circuit law requires dismissal of Plaintiff's equitable claims because he did not allege he lacks an adequate remedy at law. ................ 14
        F.    Plaintiff pleads no actionable claim for restitution/unjust enrichment. ........................................................................................... 15
    V.    CONCLUSION .............................................................................................. 15

## TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. SeaWorld Parks & Entm't, Inc.*,
  No. 15-CV-02172-JSW, 2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) ................................... 9

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) .............................................................................. 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 4

*C.W. v. Epic Games, Inc.*,
  No. 19-cv-03629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ......................... *passim*

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................................................. 8

*Coffee v. Google, LLC*,
  No. 20-CV-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ............................ 8, 15

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ............................................................................................. 4

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................................... 6

*Epic Games, Inc. v. Apple Inc.*,
  No. 4:20-CV-05640-YGR, 2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) .............. 9, 11, 13

*Ferrington v. McAfee, Inc.*,
  No. 10–CV–01455–LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .............................. 9

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ............................................................................... 12

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
  No. 13-CV-05222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ................................ 15

*Goodrich v. Alterra Mountain Co.*,
  No. 20-CV-01158-RM-SKC *et al*, 2021 WL 2633326 (D. Colo. June 25,
  2021) ................................................................................................................................... 9

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................. 11

## TABLE OF AUTHORITIES
(continued)

**Page**

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ................................................................................................10

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. SA CV 14-1645-DOC, 2015 WL 13310465 (C.D. Cal. Jan. 22, 2015),
    *aff'd*, 677 F. App'x 336 (9th Cir. 2017) ...............................................................................13

*Hovsepian v. Apple, Inc.*,
    No. 08-cv-5788-JF, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................................4

*Lusson v. Apple, Inc.*,
    No. 16-cv-00705, 2016 WL 10932723 (N.D. Cal. June 20, 2016) ........................................15

*Mai v. Supercell Oy*,
    No. 5:20-CV-05573-EJD, 2021 WL 4267487 (N.D. Cal. Sept. 20, 2021) .............................11

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) .....................................................................................5

*Mason v. Mach Zone, Inc.*,
    140 F. Supp. 3d 457 (D. Md. 2015) .......................................................................................11

*Nacarino v. Chobani, LLC*,
    No. 20-CV-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ................................14

*Olagues v. Russoniello*,
    770 F.2d 791 (9th Cir. 1985) .................................................................................................12

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
    179 Cal. App. 4th 36 (2009) ....................................................................................................5

*Principal Life Ins. Co. v. Robinson*,
    394 F.3d 665 (9th Cir. 2005) .................................................................................................13

*R.A. by & through Altes v. Epic Games, Inc*
    No. 5:19-CV-325-BO, 2020 WL 865420 (E.D.N.C. Feb. 20, 2020) ...................................4, 5

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...................................................................................9

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...........................................................................................14, 15

## TABLE OF AUTHORITIES
(continued)

Page

*T.K. v. Adobe Sys. Inc.*,
  No. 17-cv-04595-LHK, 2018 WL1812200 (N.D. Cal. Apr. 17, 2018) ................................. 13

*Takeda Pharm. Co. v. Mylan Inc.*,
  62 F. Supp. 3d 1115 (N.D. Cal. 2014) ................................................................................. 12

*Taylor v. Apple, Inc.*,
  No. 20-CV-03906-RS, 2022 WL 35601 (N.D. Cal. Jan. 4, 2022) ......................................... 11

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................................................. 5

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003) ............................................................................. 7, 8

*Walsh v. Kindred Healthcare*,
  798 F. Supp. 2d 1073 (N.D. Cal. 2011) ................................................................................. 8

*Watkins v. MGA Entm't, Inc.*,
  No. 21-CV-00617-JCS, 2021 WL 3141218 (N.D. Cal. July 26, 2021) ................................ 14

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................................. 12

**Statutes**

Cal. Civ. Code § 1770(a) ............................................................................................................. 8

Cal. Civ. Code § 1782 ............................................................................................................. 7, 8

Cal. Family Code § 6710 .................................................................................................... 10, 11

**Other Authorities**

Federal Rule of Civil Procedure
  Rule 9(b) ................................................................................................................ 2, 4, 5, 10

Federal Rule of Civil Procedure
  12(b)(6) ............................................................................................................................ 1, 4

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, March 31, 2022 at 10:00 AM PST, Defendant Niantic, Inc. ("Niantic") requests that its Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 27) ("Motion") be heard before the Honorable District Judge Vince Chhabria, in Courtroom 4, 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102.  Pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6), Defendant Niantic will, and hereby does, timely move the Court for an Order dismissing with prejudice Plaintiff's First Amended Complaint.

Niantic's Motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the Declaration of Cameron J. Clark in Support of Niantic's Motion to Dismiss ("Clark RJN Decl.") and attachments thereto, and Niantic's Request for Judicial Notice, as well as the records, pleadings, and papers on file in this action, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

**STATEMENT OF RELIEF SOUGHT**

Niantic seeks dismissal of Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff Jarrett Reeves's ("Plaintiff") initial Class Action Complaint (ECF No. 1) (the "Complaint"), and now his First Amended Class Action Complaint (ECF No. 27) (the "FAC") are nothing more than carbon copies of an earlier-filed action in the Northern District of California against a different company: *C.W. v. Epic Games, Inc.*, Case No. 4:19-cv-03629-YGR ("*C.W.*"). (*See* Clark RJN Decl., Ex. 4 (the "C.W. Complaint").)  As discussed below, many of the claims copied verbatim here (despite different apps, gameplay, and developers) were already considered and dismissed in *C.W.*, including the specific alleged "misrepresentations" at issue.  Further, many of the allegations are even less articulated in the FAC than in *C.W.*, and in some cases do not translate at all from Fortnite (*C.W.*) to Niantic's Pokémon GO, due to fundamental differences in

the underlying products. Moreover, the specific facts related to Plaintiff are materially different than those in *C.W.*, and they do not support his claims. For instance, Plaintiff pleads injury from being unable to disaffirm his contract with Niantic and obtain a refund, but he admits in the FAC that he never even ***attempted*** to seek a refund for any of the contested purchases, all of which he alleges were made long before the complaint was filed. Nor does he allege he ever saw (much less relied upon) any representation that his purchases were non-refundable. If he had attempted to obtain a refund before rushing to file a complaint, he would have found that refunds (and payments) are processed not by Niantic but by the app platform used, in this case Apple. As discussed herein, Plaintiff's claims for violation of the California Legal Remedies Act ("CLRA"), violation of the Unfair Competition Law ("UCL"), unjust enrichment, declaratory relief, and negligent misrepresentation all fail for multiple, independent reasons.

Plaintiff's CLRA, UCL, and negligent misrepresentation claims largely rest on the same conduct, and cannot proceed for a number of reasons. As an initial and dispositive matter, though the claims sound in fraud, Plaintiff fails to satisfy Rule 9(b) and fails to plead any reliance on Niantic's alleged conduct, misstatements, or omissions. Indeed, the FAC alleges the same purported misrepresentations and omissions that were already dismissed as a basis for CLRA or negligent misstatement claims in *C.W.* These claims also fail for independent reasons, including failure to make or plead a pre-suit demand (CLRA), failure to allege a "good or service" (CLRA), failure to plead a viable predicate violation (UCL), and failure to plead "unlawful" conduct (UCL).

Plaintiff's other claims are similarly deficient. Plaintiff's declaratory relief claim for disaffirmance fails because Plaintiff is no longer a minor, and by definition, cannot incur *future* injury, the prevention of which is the very purpose of the Declaratory Judgment Act. Similarly, because he has not pled that damages (*i.e.*, a refund of his purchases) would be inadequate, he cannot state a claim for equitable relief under any cause of action. His unjust enrichment claim fails for additional reasons, including because unjust enrichment is not a standalone claim, it is an equitable claim which cannot survive, and Plaintiff has not adequately alleged a factual predicate.

Plaintiff has now twice tried to repurpose allegations originally made by a different plaintiff against a different developer related to a different game for this action against Niantic, but he still

states no viable claim.  Allowing further amendment would be futile.  For these reasons, and those discussed below, the Court should dismiss Plaintiff's copycat FAC with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Niantic and Plaintiff Jarrett Reeves

Niantic is a California-based software company that develops free and popular "augmented reality video game[s]," such as Pokémon GO (hereafter, "PGO").  (*See* FAC ¶¶ 11–12, 14.)  PGO is a mobile game in which players collect, train, and battle virtual creatures called Pokémon.  (*Id.* ¶ 12.)  The game employs an augmented reality format, using GPS on players' mobile devices to make it appear as if the virtual Pokémon creatures are in the user's real world location (as viewed through the device's camera).  (*Id.*)  Any user can play PGO completely free of charge and "without making in-game purchases," though Niantic does offer in-game purchase options for players to enhance their experience.  (*See, e.g.*, *id.* ¶¶ 14, 16.)  To acquire in-game items in PGO, players may only spend PGO's virtual currency ("PokéCoins"), which players can "earn" "in-game instead of purchasing them for money" or can be purchased using real world currency (*e.g.*, a credit card or gift card).  (*Id.* ¶¶ 5, 19.)  Players cannot use "real-world currency" to acquire in-game items or enhancements.  (*See, e.g.*, FAC ¶¶ 21, 51–52, 107.)

Plaintiff Jarrett Reeves is an adult male who lives in the State of Texas.  (FAC ¶ 10.)  He alleges that he "disaffirm[ed] his entire contract with [Niantic]" after turning "18 years old" and has not played the game since that time.  (*Id.*)  Now that he is an adult, and has chosen not to play the game, he is asking the Court for a refund for approximately $252.66 that he chose to spend on PokéCoins, over an unspecific period of time ending in January 2020.  (FAC ¶ 52.)  He admits that neither he nor his parents ever attempted to obtain a refund for those purchases, and that only after obtaining counsel, did he even consider seeking a refund before deciding it would be "futile" and, therefore, making no attempt to get one.  (FAC ¶ 57.)

Presumably because many allegations were copied directly from the C.W. Complaint, the FAC is replete with inconsistencies.  For instance, Plaintiff states that "[a]ll of Plaintiff's in-App purchases were purchases ***using Plaintiff's own money***" but just a few lines earlier, Plaintiff states that "Plaintiff made several in-game purchases . . . ***using their own and their guardians' funds***."

(FAC ¶¶ 55, 64 (emphasis added).)  Plaintiff also contends, on one hand, that "several" of his purchases were "labeled non-refundable" (though he never provides more detail about which purchases and how they were labeled non-refundable) but then states in no uncertain terms that: "Prior to making the in-App purchases, *Plaintiff was not aware of the non-refundable policy*." (FAC ¶¶ 55, 60 (emphasis added).)[1]  Further, he concedes that neither he nor his parents ever reviewed or even saw Niantic's Terms and Conditions—the *only* place he ever identifies any statement by Niantic about non-refundability (FAC ¶ 57, n.2)—but then states in a conclusory fashion that, "Plaintiff relied on Niantic's misrepresentations regarding non-refundability for purchases" (FAC ¶ 63.)

### III.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citation omitted). Under this standard, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Where a claim sounds in fraud, Rule 9(b) requires specific facts to show "'the who, what, when, where, and how' of the misconduct[.]"  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (citation omitted).

### IV.   LEGAL ARGUMENT

Each of Plaintiff's legal theories fails for independent reasons, as discussed below.[2]

---

[1]  *See* pp. 5–6, *infra*.  Critically, the C.W. Complaint actually did identify particular purchases "labeled" non-refundable and provided screen shots.  Plaintiff was unable to make any such allegation here.

[2]  Plaintiff's claims may also be dismissed because he has disaffirmed (*i.e.*, voided) his entire contract with Niantic (FAC ¶ 10), and thus Niantic is entitled to restore his funds and end the action.  This is precisely what happened in *R.A. by & through Altes v. Epic Games, Inc*, another putative class action based on minors' purchases in Fortnite.  No. 5:19-CV-325-BO, 2020 WL 865420, at *1 (E.D.N.C. Feb. 20, 2020).  In *R.A.*, after the minor confirmed he was disaffirming his entire contract, Epic accepted the disaffirmance, offered a refund, and moved to dismiss on the basis of the disaffirmance and mootness.  *Id*.  Applying California law, the court dismissed the entire action, including CLRA, UCL, and unjust enrichment causes of action, because the plaintiff "erase[d] the entire basis for his claims [based on in-app purchases]" when he disaffirmed any such purchases and Epic accepted.  *Id*. at *2.  The court reasoned that the plaintiff could not "void the transactions with defendant and receive his refund while simultaneously maintaining causes of

### A. Plaintiff's CLRA, UCL, and negligent misrepresentation claims fail.

Plaintiff's CLRA, UCL (fraud prong), and negligent misrepresentation claims fail because Plaintiff has not alleged his claims with particularity under Rule 9(b), and has not pled reliance. Plaintiff's CLRA and negligent misrepresentation claims also fail because Plaintiff has not pled any actionable misrepresentation and omission. The same claimed misrepresentations and omissions were considered—and rejected—in *C.W.*

***First***, these claims each fundamentally sound in fraud and Plaintiff must meet the heightened pleading standard of Rule 9(b), which he has not done. The allegations supporting these claims lack basic detail and specificity. For instance, Plaintiff claims that Niantic "conceals and misleads minors by not displaying the terms of the in-[a]pp purchase at the time of purchase including non-refundability or by displaying non-refundability in very small font at the side." (FAC ¶ 48.) This allegation is copied verbatim from the C.W. Complaint, but unlike *C.W.*, nowhere does the instant FAC identify where ***Niantic*** actually "displays" a non-refundability term to players at the time of purchase at all, much less in an unacceptably small font. Indeed, Plaintiff specifically alleges that he has no recollection of reading Niantic's Terms, in any context. (FAC ¶ 54.)

***Second***, Plaintiff's CLRA, UCL, and negligent representation claims also fail because Plaintiff has not pled the requisite justifiable reliance. *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002–03 (N.D. Cal. 2009) (reliance is "necessary to state a claim under the CLRA"); *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 43 (2009) ("reliance is required in a UCL action"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1111 (C.D. Cal. 2015) ("justifiable reliance" is a required element of a negligent misrepresentation claim). Plaintiff's allegations of reliance are conclusory. Throughout the FAC, Plaintiff fails to identify any specific representation on which he relied, only alleging that he relied on: (1) "representations regarding the value of in-game items" (FAC ¶ 51); (2) unstated "misrepresentations regarding non-refundability" (*id.* ¶ 63); (3) "[Niantic's] omission" of

---

action that arise solely from those transactions." *Id.* As in *R.A.*, Plaintiff cannot state any claim on which he is entitled to relief, based on his in-app purchases, if he disaffirms his entire contract and Niantic makes an offer of payment.

Plaintiff's alleged right to "disaffirm his contract with Niantic and receive a refund" (*id.* ¶ 97); and (4) "Niantic's misrepresentations" (*id.* ¶ 123.)  Further, his theory of reliance, even accepting these nebulous representations, is insupportable given other allegations.  Plaintiff admits that he never reviewed Niantic's Terms and Conditions (the only place the FAC identifies as containing any representation about refundability) and that he was "not aware of the non-refundable policy[.]" (FAC ¶¶ 34, 44, 54, 97.)  When faced with near exact, nondescript allegations of reliance on alleged misrepresentations of refundability, the *C.W.* court dismissed such contentions as insufficient to state a claim where the plaintiff did not specifically allege that he saw the representation at issue.[3]  *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046–47 (N.D. Cal. 2020) ("[W]hile plaintiff alleges that a disclaimer stating that purchases are 'not eligible for refund' appears 'in very small inconspicuous text,' plaintiff does not allege whether he saw this disclosure, and if he did, how he was misled by it."); *C.W. v. Epic Games, Inc.*, No. 19-cv-03629-YGR, 2020 WL 5257572, at *6 (N.D. Cal. Sept. 3, 2020) (dismissing with prejudice the same amended claims under the CLRA).

***Finally***, Plaintiff's CLRA and negligent misrepresentation claims should be dismissed for failure to plead any actionable misrepresentation.  Again, when faced with effectively the same alleged misrepresentations *i.e.*, that the defendant "failed to represent that all purchases were refundable under state law, frequently pushed new content rendering older content stale, and failed to provide historical statements", the court in *C.W.* expressly found that such allegations "d[id] not state a misrepresentation claim" and were "not actionable under the CLRA" or as negligent misrepresentations.  *C.W. v. Epic*, 2020 WL 5257572, at *3, *5; (FAC ¶¶ 41, 84, 86).  *C.W.* found that these statements lacked a basis in the parties' contract and/or they were not misleading.  *Id.*  There is no reason for the Court to depart from the *C.W.* ruling here.

Plaintiff's CLRA and negligent misrepresentation claims here are based on the same

---

[3]   Although Plaintiff alleges that he "was not aware of the non-refundable policy" (FAC ¶ 60), he also alleges that he "made several in-game purchases that were ***labeled non-refundable***" (*id.* ¶ 55) (emphasis added).  The *C.W.* court spotted these "inconsistencies in plaintiffs' allegations" in the C.W. Complaint and specifically noted that in the amended complaint, "plaintiffs no longer allege that C.W. made purchases 'that were labeled non-refundable.'"  2020 WL 5257572, at *3–4 & n.5.  Plaintiff's counsel appears to have simply copied allegations from the C.W. Complaint, without removing the "inconsistencies" present in that complaint.

rejected misrepresentations as in *C.W.*, namely that Niantic: (1) "misrepresents the applicable law for transactions" and "does not acknowledge a minor's right to get a refund;" (*see* FAC ¶¶ 43, 83); (2) represents that purchases of non-descript "digital item[s]" are a "great value proposition" while frequently making new content available, rendering old content "stale" (*id.* ¶ 84); and (3) does not provide "historical statements of in-[a]pp purchases" (*see id.* ¶ 86). The *C.W.* court considered, and dismissed these same allegations. *See* 2020 WL 5257572, at *5 (reasoning that the issue of refundability did not rise to the level of a fact that the defendant was obligated to disclose); *id.* at *2 (determining that there is "nothing inherently inconsistent with [a] defendant marketing its in-app content as . . . a 'great value proposition'"); *id.* at *5 (finding a failure to provide "historical statements for in-[a]pp purchases" is "not actionable under the CLRA"). The only alleged "misrepresentation" that Plaintiff added to the FAC is that "Defendant misrepresents that any refunds given are entirely within the discretion of Defendant." (FAC ¶ 45.) Aside from being demonstrably untrue (*see* Clark RJN Decl., Ex. 6 (noting that Niantic's public support webpage directs Apple users to "please contact Apple Support" to "request a refund")), Plaintiff fails to explain to what this nondescript allegation refers (or even means), where Niantic shared this alleged misrepresentation with Plaintiff, or whether Plaintiff ever saw it.[4]

### B. Plaintiff's CLRA claim fails for additional claim-specific reasons.

#### 1. Plaintiff failed to serve a CLRA pre-litigation demand.

As a threshold matter, Plaintiff's CLRA claim for damages must be dismissed because Plaintiff failed to: (1) provide Niantic with a notice and demand letter before filing the Complaint, as required by California Civil Code § 1782; and (2) allege that he did so in the FAC. *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing with prejudice CLRA claims for damages both because the plaintiff (a) did not provide requisite notice and (b) "did not allege in the [complaint] that it had given Defendant proper notice under the CLRA").

---

[4] In *C.W.*, the only misrepresentation theory that the court permitted to proceed (after plaintiff's amendment added significant detail utterly lacking here), was C.W.'s theory that the defendant developer misrepresented a specific Fortnite offering described as a 30-day "Battle Pass," made specific related statements about non-refundability after 30 days, and non-refundability after a player made three refund requests. 2020 WL 5257572, at *4. Plaintiff has not made analogous allegations in the FAC as to Niantic, nor any which even approach the specificity of the allegations that the *C.W.* plaintiff provided about the Fortnite Battle Pass. *Id.*

Per Civil Code Section 1782, Plaintiff had to: (1) send Niantic a demand letter "by certified or registered mail;" (2) "thirty days *prior to commencing* a CLRA action for damages;" that (3) outlined "the particular [CLRA] violations that the plaintiff is alleging and demand that the defendant correct those violations." *Von Grabe*, 312 F. Supp. 2d at 1304 (emphasis added). Plaintiff did not do so, and instead sent Niantic an untimely demand letter a week *after* commencing his action in this Court. (*See* Clark RJN Decl., Ex. 2.)  This delay requires dismissal with prejudice of Plaintiff's CLRA claim for damages, as "[p]ermitting Plaintiff to seek damages first and then later [provide notice and amend] would destroy the notice requirement's utility, and undermine the possibility of early settlement." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) (dismissing CLRA damages claim with prejudice).

### 2. Plaintiff has not pled claims related to a "good or service" under the CLRA.

Plaintiff's CLRA claim should also be dismissed because the CLRA proscribes specific acts or practices only "in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]"  Cal. Civ. Code § 1770(a).  As numerous courts have held, the purchase of virtual currency for use within a video game constitutes neither "goods" nor "services," and cannot form the basis of a CLRA claim. *See, e.g.*, *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2021 WL 493387, at *11 (N.D. Cal. Feb. 10, 2021) (reasoning that "courts in this district have held that virtual currency is not a good or service for purposes of the CLRA"). Plaintiff does not allege that PokéCoins are "goods" under the CLRA.  Despite only alleging purchases of virtual currency, Plaintiff attempts to plead around clear precedent establishing that virtual currency is not a "service" or a "good" by claiming that "in-[a]pp purchases" are actionable under the CLRA as an "entertainment service [provided] using internet and cloud-based technology." (*See* FAC ¶¶ 11, 81–83, 112.)  These allegations are not sufficient under the CLRA.

Courts have narrowly interpreted "services" under the CLRA to cover "work, labor, and services" used for commercial activities other than business purposes. *See, e.g.*, *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1089 (N.D. Cal. 2011) (holding that health services provided by skilled nursing facilities, for example, fall within the CLRA's definition of "services"). In cases

involving software, courts consistently find that the CLRA does not apply. *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1116 (N.D. Cal. 2016) (transcription program was not a "service" under the CLRA); *Ferrington v. McAfee, Inc.*, No. 10–CV–01455–LHK, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010) (software is not a good or service under the CLRA).

Those "entertainment services" deemed viable bases for CLRA claims at the motion to dismiss stage involve the purchase of tangible tickets granting admission to places like amusement parks and ski resorts. *See, e.g.*, *Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-CV-02172-JSW, 2016 WL 8929295, at *10–11 (N.D. Cal. Nov. 7, 2016) (emphasizing that the claims were based on the purchase of tickets granting admission to SeaWorld); *Goodrich v. Alterra Mountain Co.*, No. 20-CV-01158-RM-SKC *et al.*, 2021 WL 2633326, at *11 (D. Colo. June 25, 2021) (emphasizing the purchase of "admission tickets" which granted access to "services such as providing groomed trails and ski lifts and gondolas to reach such trails"). PGO, a free mobile app, does not come close to these types of recognized "entertainment services."

In *C.W.*, the court reasoned, without deciding, that Fortnite could possibly be an "entertainment service," before dismissing the CLRA claim on other grounds. But Fortnite differs from PGO in material respects, relevant to the court's reasoning. Specifically, Fortnite **does** require payment for certain "otherwise locked content," whereas Plaintiff admits PGO can be played entirely "without making in-game purchases." (FAC ¶ 16); *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2021 WL 4128925, at *7 (N.D. Cal. Sept. 10, 2021) (noting that Fortnite players have to purchase a "Battle Pass" if they want access to certain challenges or "otherwise locked content"). The *C.W.* court reasoned that Fortnite might be an entertainment service (**but did not decide one way or the other**) because players of Fortnite can "meet, play, talk, compete, dance, and even attend concerts and other cultural events." 2020 WL 5257572, at *4. Plaintiff here includes no such allegations in the FAC, and indeed could not so allege because the PGO app **does not have these features**. All Plaintiff alleges in the FAC is that PGO is an entertainment service because: "it provides a virtual world where millions of payers [sic] interact with each other and with the outside world" and that it "incorporat[es] real-world locations and events into its gameplay." (FAC ¶ 82.) This is not *remotely* equivalent to the tickets to Sea World

or a ski resort that courts find qualify as an "entertainment service." Moreover, Plaintiff does not (and could not) allege that the listed game features require any kind of purchase, as Plaintiff elsewhere admits the game is *free*. The game features are also ***experienced*** only on the user's mobile phone, even when the user is at a "real-world" location, and the augmented reality features of the game make the Pokémon characters "appear" on the player's personal mobile device. In no sense is using PGO akin to the "entertainment services" recognized in the law.

### C.   Plaintiff's UCL claims fail for additional reasons.

As described above, any claim under the UCL fraud prong must fail under Rule 9(b) and because Plaintiff has not pled reliance. Plaintiff's allegations under the unlawful and unfair prongs of the UCL also fail because Plaintiff cannot point to any predicate law that Niantic violated, nor can he point to any unfair business practice in which Niantic engaged.

***First***, as discussed above, Plaintiff has no viable CLRA claim, and thus the CLRA cannot serve as the predicate violation for a UCL "unlawful" prong claim. *Hovsepian v. Apple, Inc.*, No. 08-cv-5788-JF, 2009 WL 5069144, at *4 (N.D. Cal. Dec. 17, 2009) (dismissing "a derivative UCL claim based on a CLRA violation" where the underlying violation failed). To the extent Plaintiff's "unlawful" claim is based on a violation of his right to disaffirmance under California Family Code § 6710, Plaintiff does not plead that he ever made an attempt to "disaffirm" his contract with Niantic, and admits he never requested a refund for any purchase. He thus does not, and could not, allege that Niantic violated this right by rejecting his attempt to obtain a refund or disaffirm.

***Second***, Plaintiff's claims under the unfair prong also fail because Plaintiff has not actually alleged that anything Niantic did was "unfair" as that term is intended in the UCL—*i.e.*, "offen[sive]" to "public policy," "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (citation omitted). Plaintiff alleges that Niantic engaged in "unfair practices by actively advertising, marketing and promoting Apps as 'free' with the intent to induce minors to purchase Game Currency."[5] (FAC ¶ 92.) But all of Niantic's representations that Plaintiff identifies are true. PGO

---

[5]   This allegation is copied directly from *C.W.*, where "Game Currency" was a defined term in that complaint. (*See* C.W. Complaint ¶¶ 18, 121.) That term is still not defined here.

*is* free to play and Niantic does not conceal that purchases are available. (*See, e.g.*, FAC ¶¶ 3, 14–15 (alleging that PGO is both free and that Niantic offers it for free).)  Nowhere does Plaintiff allege that Niantic makes any representations to the contrary about the free game or the availability of in-app purchases.

*Third*, though Plaintiff added some allegations about "loot boxes" to his FAC: "Courts have held that in-game currency used for loot boxes is not an economic injury within the meaning of the UCL" and have dismissed UCL and other claims (including CLRA claims) based on so-called "loot boxes."  *Mai v. Supercell Oy*, No. 5:20-CV-05573-EJD, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021); *see also Mason v. Mach Zone, Inc.*, 140 F. Supp. 3d 457, 465–66 (D. Md. 2015) (applying California law).  The Chief Judge of this District also affirmed that "purchas[ing] virtual coins to buy chances on loot boxes" did not "support cognizable economic injury" under the UCL or amount to "adequate" damages under the CLRA. *Taylor v. Apple, Inc.*, No. 20-CV-03906-RS, 2022 WL 35601, at *2, n.1 (N.D. Cal. Jan. 4, 2022) (Seeborg, J.).

*Finally*, Plaintiff's "unfair" claims should also be dismissed for the independent reason that they entirely overlap with Plaintiff's allegations of unlawful and fraudulent conduct.  *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (when allegations of "unfair" practices overlap entirely with claims under "the fraudulent and unlawful prongs of the UCL, the unfair prong . . . cannot survive" if the unlawful and fraudulent claims do not survive).

### D. Plaintiff's claim for declaratory relief under California Family Code § 6710 fails.

Plaintiff, who has now reached the age of majority, brings a claim for declaratory relief related to his right to disaffirm contracts under the California Family Code, which allows minors to disaffirm contracts they entered into as minors prior to turning 18 or within a reasonable time thereafter. Cal. Fam. Code § 6710. (FAC ¶¶ 10, 111–118.)  Plaintiff's declaratory relief claim fails for at least three reasons.  First, Plaintiff is no longer a minor and therefore, necessarily, cannot make future contracts subject to a right of disaffirmance. (FAC ¶ 10.)  Second, Plaintiff admits he has never actually been *denied* a refund (because he did not request one), and thus there is no ripe dispute. (FAC ¶¶ 44, 57.)  Third, it has already been established in other cases that software

developers do not control the payment and refund systems for their apps when played on an operating system like Apple or Google. *See, e.g.*, *Epic Games v. Apple Inc.*, 2021 WL 4128925, at *26. Plaintiff is not entitled to proceed on a fiction that somehow Niantic dictates whether he can obtain a refund for transactions on his iPhone made through the Apple platform. The Court has discretion whether to entertain a declaratory relief claim and the Court should reject Plaintiff's claim here. *See, e.g.*, *Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1122 (N.D. Cal. 2014) (courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites" (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995))).

***First***, Plaintiff's claim fails because there can be no ripe "case or controversy" where Plaintiff is no longer a minor and thus necessarily has no need for declaratory judgment pertaining to ***prospective*** rights. As the Ninth Circuit has long held, "[t]he central purpose of the Declaratory Judgment Act . . . is to provide parties with a declaration of their rights ***prior to incurring actual injury***." *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985) (emphasis added) (affirming denial of declaratory relief claim where plaintiff had already suffered alleged harm). As an adult, Plaintiff cannot benefit from any declaration of his disaffirmance rights related to future transactions. His entire injury, if he has been injured, relates to past transactions not meeting the clear standard for applicability of the Declaratory Judgment Act.

***Second***, Plaintiff's FAC confirms that he never tried to "disaffirm" his purchases and obtain a refund, and therefore has not been denied a refund or disaffirmance. (FAC ¶¶ 44, 57.) In contrast, the plaintiff in *C.W.* clearly alleged that he requested and was denied a refund. (*See* C.W. Complaint ¶ 45.) Here, Plaintiff specifically alleges that he "wanted" to seek a refund but that he believed he "was not allowed to do so within the *Pokémon* ecosystem" and he thus concluded that any "attempt to request a refund would . . . be futile." (FAC ¶ 57.) He does not, and apparently cannot, allege that he made any attempt to obtain a refund other than by filing a lawsuit.[6] The

---

[6] Elsewhere, he alleges that he requested a refund "no later than the filing of this lawsuit," but that allegation is copied directly from the C.W. Complaint (*compare* FAC ¶ 114 *with* C.W. Complaint ¶ 87), and contradicts his earlier allegation about deciding that requesting a refund would be futile.

minors in other disaffirmance cases involving refunds clearly pled threshold unsuccessful attempts by themselves or their parents to actually obtain refunds before filing the lawsuit. *See, e.g.*, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 997 (N.D. Cal. 2012) (noting a pre-lawsuit attempt to "obtain a refund"); *T.K. v. Adobe Sys. Inc.*, No. 17-cv-04595-LHK, 2018 WL1812200, at *1 (N.D. Cal. Apr. 17, 2018) (same).  Plaintiff has not done so here, and thus there is no ripe dispute.  *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) ("The requirement that a case or controversy exist under the Declaratory Judgment Act is identical to Article III's constitutional case or controversy requirement.  If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction.") (quotation marks and citation omitted)).

***Third***, while Niantic developed the PGO game software, as the Northern District recently held in another matter involving in-app purchases through the Apple store, "developers [e.g., Niantic] have ***effectively no control over payment issues***," which "can be frustrating for both sides when issues arise relating to the inability to issue and manage . . . requests for refunds." *Epic Games v. Apple Inc.*, 2021 WL 4128925, at *26 (emphasis added).

Plaintiff attempts to plead around the fact that Niantic does not handle payment or refunds by adding one vague allegation to the FAC that "[m]inors make in-App purchases ***from Niantic***," (FAC ¶ 31) (emphasis added), and deleting allegations in his original Complaint concerning his iPhone, Apple, and purchases made from the Apple Store (*compare* Compl. ¶¶ 40, 67, 70 *with* FAC ¶ 33).  But Plaintiff cannot omit the truth to escape his previous judicial admissions, which he removed from the FAC, but never amended or retracted.  *See, e.g.*, *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. SA CV 14-1645-DOC (RNBx), 2015 WL 13310465, at *3 (C.D. Cal. Jan. 22, 2015), *aff'd*, 677 F. App'x 336 (9th Cir. 2017) ("Factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them [and] and may be considered in a motion to dismiss.") (citations omitted).

Nor should Plaintiff be allowed to craft and plead a fiction in his amended complaint, when the well-documented reality is that any alleged in-app purchases that Plaintiff made on an iPhone would necessarily have gone through Apple. *Epic Games v. Apple Inc.*, 2021 WL 4128925, at

*26. The same is true of any request for a refund. *Id.* Niantic specifically directs its players to Apple's refund process. (*See* Clark RJN Decl., Exs. 5, 6.) Apple's refund support page directly addresses purchases by minors and permits customers to select "child/minor made purchase(s) without permission," as a refund category when seeking a refund. (*Id.* at Ex. 5.)

### E. Ninth Circuit law requires dismissal of Plaintiff's equitable claims because he did not allege he lacks an adequate remedy at law.

Plaintiff's FAC alleges a number of claims for equitable relief. (*See, e.g.*, FAC ¶¶ 102–103 (seeking "an injunction," "restitution" and "disgorge[ment]" of alleged "ill-gotten gains"); *id.* ¶¶ 105–110 (seeking restitution and unjust enrichment); *id.* ¶ 114 (seeking "injunctive relief on behalf of the Class for future and prospective transactions on the Pokémon video gaming platform and ecosystem").) But, in order to seek equitable relief, Plaintiff must allege that there is an inadequate legal remedy (*i.e.*, damages). He has not done so. His equitable claims under the UCL and CLRA, and his unjust enrichment claim should thus be dismissed.

The Ninth Circuit has settled that, absent any allegations a plaintiff lacks an adequate remedy at law, it is improper for a federal court to even ***consider*** equitable remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841, 844 (9th Cir. 2020) (reasoning that a federal court cannot improperly expand its equitable authority and "must apply traditional equitable principles before awarding restitution under the UCL and CLRA"). Since *Sonner*, district courts within the Ninth Circuit have held that to seek any equitable relief, a Plaintiff must allege that he or she has an inadequate remedy at law at the pleading stage. *See, e.g.*, *Watkins v. MGA Entm't, Inc.*, No. 21-CV-00617-JCS, 2021 WL 3141218, at *17 (N.D. Cal. July 26, 2021) (concluding that the reasoning from *Sonner* "applies at the pleading stage," and concluding that claims for equitable relief under the UCL and CLRA fail as a matter of law); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12–13 (N.D. Cal. Aug. 9, 2021) (dismissing "equitable restitution or disgorgement" claim under *Sonner*). Because of this pleading deficiency, Plaintiff's equitable and injunctive claims must be dismissed.

**F.      Plaintiff pleads no actionable claim for restitution/unjust enrichment.**

Plaintiff's third cause of action for restitution or unjust enrichment is incognizable and should be dismissed with prejudice for three reasons.

***First***, California[7] law plainly rejects standalone claims for restitution or unjust enrichment. *See, e.g.*, *Lusson v. Apple, Inc.*, No. 16-cv-00705, 2016 WL 10932723, at *3 (N.D. Cal. June 20, 2016) (Chhabria, J.). ***Second***, Plaintiff failed to identify any alleged misrepresentation that could support a quasi-contract claim, requiring dismissal of his unjust enrichment claim. *C.W. v. Epic.*, 2020 WL 5257572, at *6. ***Third***, as discussed above, Plaintiff has an adequate legal remedy and therefore may not seek equitable remedies. *Sonner*, 971 F.3d at 844. Pleading equitable remedies in the alternative is insufficient to overcome dismissal. *See, e.g.*, *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims."); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014) (Chhabria, J.) (dismissing unjust enrichment claims that were duplicative of plaintiffs' statutory and common law claims).

**V.     CONCLUSION**

For all these reasons, Plaintiff's FAC should be dismissed with prejudice.

Dated: January 14, 2022                                         COOLEY LLP


                                                                By: *Jeffrey Gutkin*
                                                                    Jeffrey Gutkin

                                                                Attorneys for Defendant
                                                                NIANTIC, INC.

262657206

---

[7]      Plaintiff is a resident of Texas, asserting claims in California court, and still fails to specify under which state law he seeks unjust enrichment or restitution. (FAC ¶¶ 105–110.) This oversight itself warrants dismissal of his claim. *See Coffee*, 2021 WL 493387, at *11.